IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TAMMI S.W. </br></br>      Plaintiff, </br></br> v. </br></br> COMMISSIONER OF SOCIAL SECURITY, </br></br>      Defendant. | Civil No. 1:24-cv-09889 (RMB) </br></br> **OPINION** |

**APPEARANCES**

Samuel Fishman
Chermol & Fishman, LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

 *On behalf of Plaintiff*

Catherine Elisabeth Hamilton
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of Program Litigation, Office 3
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

 *On behalf of Defendant*

**RENÉE MARIE BUMB, Chief United States District Judge**

 This matter comes before the Court upon an appeal filed by Plaintiff Tammi S.W. ("Plaintiff") seeking judicial review of the final determination of the

1

Commissioner of the Social Security Administration (the "SSA"), which denied her application for Social Security Disability benefits. For the reasons set forth herein, the Court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").

I.  PROCEDURAL HISTORY

On August 31, 2021, Plaintiff filed an application for Social Security Disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning March 11, 2021. [R. at 17.] The claim was first denied on January 18, 2022, and again denied upon reconsideration on June 28, 2022. [*Id.*]

Plaintiff filed a timely written request for a hearing before an ALJ. [*Id.*] That hearing took place on June 28, 2022. [*Id.*] Plaintiff was represented by an attorney at the hearing at which the ALJ heard testimony from Plaintiff. [*Id.*] The ALJ also heard testimony from a vocational expert, Cherie Plante. [*Id.*] The ALJ issued her decision on February 6, 2024, finding that Plaintiff was not disabled under the Act. [*See infra* at III.B.] On August 22, 2024, the Appeals Council denied Plaintiff's renewed request for review, rendering the ALJ's decision final. [R. at 1-3.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id*. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience." *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198 201–02 (3d Cir. 2019) (some alterations omitted).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff had not engaged in substantial gainful activity since the alleged onset date; March 11, 2021. [R. at 19.] Plaintiff met the insured status requirements of the Act through December 31, 2025, meaning that she had to establish disability on or before that date to be entitled to benefits. [*Id.*]

#### A. Plaintiff's Educational Work, and Medical History

Plaintiff has at least a high school education and previously worked as a home attendant. [R. at 31.] The ALJ determined that Plaintiff had not engaged in substantial gainful activity between the alleged onset date and the date Plaintiff was last insured. [R. at 19.] Plaintiff suffers from the following physical impairments: fibromyalgia, degenerative disc disease of the cervical spine, asthma, diabetes mellitus, and tendinopathy with tear of her left shoulder rotator cuff. [R. at 20.] Plaintiff suffers from the following mental impairments: major depressive disorder and generalized anxiety disorder. [*Id.*]

#### B. The ALJ's Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability; March 11, 2021. [R. at 19.]

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, degenerative disc disease of the cervical spine, asthma, diabetes mellitus, and tendinopathy with tear of her left shoulder rotator cuff. [R. at

20.] However, the ALJ found Plaintiff's major depressive disorder and generalized anxiety disorder were not severe. [*Id.*]

At Step Three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [R. at 21-22.]

At Step Four, the ALJ found that, during the relevant period, Plaintiff had the RFC

> to perform light work as defined in 20 [§ C.F.R.] 404.1567(b) except that she must avoid concentrated exposure to extreme heat, extreme cold, extreme humidity, dust, odors, fumes or other pulmonary irritants; cannot lift and/or carry any weight with the left, non-dominant upper extremity; can never reach overhead or in any direction with the left, upper extremity; cannot climb ladders, ropes or scaffolds or crawl, but can occasionally climb stairs and ramps, balance, stoop, kneel and crouch; can occasionally work with moving mechanical parts and vibrations, but cannot drive a motor vehicle or work with unprotected heights.

[R. at 23-24.] The ALJ further found that Plaintiff could not perform any past relevant work. [R. at 31.]

At Step Five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC. [*Id.*] Crediting testimony of the vocational expert, the ALJ found that Plaintiff would be able to perform the requirements of representative occupations such as: cashier II, ticket seller, and order caller. [R. at 31-32.] Accordingly, the ALJ concluded that Plaintiff was not disabled. [R. at 32.]

## IV. DISCUSSION

Plaintiff raises four arguments in support of remand. First, she argues that the SSA failed to satisfy its burden under Step Five in violation of Social Security Ruling ("SSR") 00-4p by failing to obtain vocational evidence. Second, she argues that the ALJ failed to account for her cervical functional limitations that were identified by the consultative examiner, Dr Juan Carlos Cornejo. Third, she argues the ALJ failed to account for her mental functional limitations. Finally, she asserts that the ALJ's decision facially violated SSR 96-8p.

### A. The ALJ's Failure to Satisfy the Burden Imposed by Step 5 by Not Obtaining Vocational Evidence.

Plaintiff argues that the ALJ failed to address and resolve the conflicts between the vocational expert and the Dictionary of Occupational Titles ("DOT") as two of the jobs listed, cashier II and order caller, require frequent reaching. [Pl.'s Br. at 3.] The SSA argues that the ALJ was aware of Plaintiff's physical limitations as testified to by the vocational expert and determined there to be no conflict. [Def. Br. at 5-6.]

The DOT defines Cashier II as

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. [M]ay give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. [M]ay operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile

7

> printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment . . . .

[DOT #211.462-010.] Order Caller is defined as

> Reads items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available. May read items to CHECKER (clerical) I who examines articles prior to shipping. May be designated by kind of data called out to other worker[s] . . . .

[DOT #209.667-014.] Ticket Seller is defined as

> Sells tickets for travel on ferryboats, street railroads, buses, and for admission to places of entertainment, such as skating rinks, baseball parks, stadiums, and amusement parks: Depresses key on ticket-dispensing machine that automatically ejects number of tickets requested by patron or tears tickets from roll and hands ticket to patron. Accepts payment and makes change. Answers questions concerning fares, routes, schedules, and reservations, and gives information concerning coming attractions. Keeps daily balance sheet of cash received and tickets sold. May fill reservations for seats by telephone or mail. May sell tickets from box office and be designated Cashier, Box Office (amuse. & rec.). May collect fares from repeat riders at amusement park and be designated Second-Ride-Fare Collector (amuse. & rec.). May collect fares from railroad passengers at station and sell commuter tickets and be designated Station Agent . . . .

> [DOT #211.467-030.]

None of these definitions are indicative of a frequent reaching requirement for Plaintiff's nondominant, left arm. [Pl. Br. at 3, and R. at 23-24.] During the vocational expert's testimony, Plaintiff's counsel inquired if a person without full use of their left arm could performed the listed jobs, which the expert responded affirmatively so long as they retained full use of their right arm. [R. at 46.] Nowhere is there a finding that

8

Plaintiff has any mobility limitations of her dominate, right arm. Plaintiff herself testified to the ability of using her left arm with the assistance of her right. [R. at 59.]

Further, the vocational expert identified other potential conflicts between the occupations as listed in the DOT and provided explanations how they were identified and resolved. [R. at 44-46.] Therefore, the ALJ obtained the necessary vocational evidence required in determining Plaintiff's ability to perform occupations listed in the DOT. *See Diehl v. Barnhart*, 357 F.Supp.2d 804, 822 (E.D.Pa. 2005) (Finding no conflict to exist when a Plaintiff can "satisfy the requirements of the job by reaching, handling, and fingering with his left hand with occasional assistance from his right hand."); SSR 00-49, 2000 WL 1898704.

### B. The ALJ's Failure to Account for Plaintiff's Cervical Range of Motion Limitations.

Plaintiff also argues that the ALJ failed to consider the significant limitations Plaintiff's lack of cervical range imposed upon her ability to perform light work. [Pl. Br. at 8-9.] The SSA argues that the ALJ did, in fact, thoroughly address why Plaintiff did not require her cervical range of motion limitations to be considered. [Def. Br. at 6.]

"During step three, the ALJ compares the medical evidence of a claimant's impairments with those listed in the Impairment List, which are presumed severe enough to preclude any gainful work." *Kenneth S. v. O'Malley*, 2025 WL 866008, at *6 (D.N.J. March 19, 2025) (citing *Holley v. Colvin*, 975 F.Supp. 2d 467, 476 (D.N.J. 2013)). Listings included in the Impairment List "are descriptions of various physical

9

and mental illnesses and abnormalities, most of which are categorized by the body system they affect . . . [and are] defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). To establish that a claimant's impairment "matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

ALJ's need not "use particular language or adhere to a particular format in conducting [their] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d. Cir. 2004). Rather, they must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d. Cir. 2000)). Further, "[a]n ALJ's decision at step three need not address every single piece of medical evidence in the record." *Kenneth S.*, 2025 WL 866008, at *7.

Here, the Court finds substantial evidence in support of the ALJ's step three determination as they made specific findings and cited to specific evidence in finding the severity of Plaintiff's cervical spine impairment as applied to the Impairment List. The relevant listing is Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)). This Listing requires a showing of

> pain, paresthesia and/or muscle fatigue; Radicular distribution of neurological signs present during physical examination or on a diagnostic test and evidenced by muscle weakness, sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root and sensory changes evidenced by decreased sensation or sensory nerve deficit . . . on electrodiagnostic testing or decreased deep

10

tendon reflexes; Findings on imaging consistent with compromise of a nerve root(s) in the cervical . . . spine; and Impairment-related physical limitation of musculoskeletal functioning that has lasted . . . for a continuous period of at least [twelve] months, and medical documentation of at least one of the following: a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; an inability to use one upper extremity to independently initiate, sustain and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; and/or an inability to use bot upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

[R. at 21-22 (quoting 20 C.F.R. § 404.15).] The ALJ's determination clearly acknowledges that the diagnostic evidence produced by Plaintiff "showed degenerative changes of the cervical spine with four large protrusion herniations," it did not show any "evidence of nerve root compromise." [R. at 22, 359-59, 675, 683.] Additionally, Plaintiff failed to produce any evidence of a documented medical need for an assistive device, which is required by the listing. 20 C.F.R. § 404.15(d)(1). Thus, the ALJ did not fail to account for Plaintiff's cervical spine impairment, but rather properly found that Plaintiff did not satisfy all criteria of the listing to qualify as impaired. *Sullivan*, 493 U.S. at 530.

### C. The ALJ's Failure to Account for Plaintiff's Mental Functional Limitations.

Plaintiff argues that the ALJ failed to account for its Step Two findings of mental functional limitations in her RFC determination. [Pl. Br. at 12.] The SSA

asserts that no mental functional limitations were established by the record and therefore did not require consideration in the final determination. [Def. Br. at 11.]

RFC "is defined as that which an individual is still able to do despite the limitations caused by [their] impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir.1999)); *see also* 20 C.F.R. § 404.1545(a) ("Your [RFC] is the most you can still do despite your limitations."). The ALJ must consider "all the relevant evidence in [the] case record" when determining an individual's RFC. 20 C.F.R. § 404.1545(a); *see also Burnett*, 220 F.3d at 121. Such evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir.2001). The ALJ's determination must be "accompanied by a clear and satisfactory explication of the basis on which it rests." *Id.* at 41 (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981)).

In the present instance, the ALJ conducted a thorough analysis, reaching a conclusion unfavorable to Plaintiff. [R. at 25, 28-29.] In Plaintiff's RFC analysis, the ALJ noted that Plaintiff declined treatment with a mental health professional and was not engaged in counseling, rather choosing to receive her mental health treatment from her primary care provider. [R. at 28-29, 54-66, 427, 1240-42, 1384.] Plaintiff testified that "she requires no reminders to tend to her personal care needs or take her medications and she is capable of handling her own finances." She further stated, "she

is able to shower, dress, and prepare herself for the day [and] . . . follow directions well and pay attention for long periods." [*Id.* at 28, 221-22, 225.]

Therefore, Plaintiff's assertion that "the ALJ included precisely zero mental functional limitations in her RFC finding" is contrary to the record. [Pl. Br. at 12.] Rather, the ALJ identified conflicting areas of testimony as pertained to Plaintiff's mild mental impairments while considering "all the relevant evidence in [the] case record" when determining her final RFC. 20 C.F.R. § 404.1545(a).

Plaintiff also argues that she is precluded from the occupations of cashier II and ticket seller due to the significant amount of social interaction required, resulting in only 11,037 jobs available in the national economy. [Pl. Br. at 13 (citing R. at 32).] This argument is baseless as this Court found that the ALJ did consider Plaintiff's mental limitations when determining her RFC which the vocational expert concluded her able to perform the requirements of more than 470,000 jobs in the national economy. [R. at 25-32]; s*ee Hess*, 931 F.3d at 210 ("[T]he functional limitation findings do not dictate the terms of the ALJ's statement of the claimant's limitation in the final analytical steps."); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("[T]he ALJ must accurately convey to the vocational expert of all of claimant's *credibly established limitations*.").

### D.  SSR 96-8p.

Plaintiff argues that the ALJ's determination is legally defective as it "failed to indicate with specificity the claimant's functional abilities with respect to each individual physical activity such as lifting, standing, walking, and sitting." [Pl. Br. at

13

15.] This is not so. The language of SSR 96-8p "does not command ALJs to make specific, written findings on dozens of individual work function categories." *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), slip op. at *6 available at 2000 U.S. App. LEXIS 38785, 2000 WL 1929759 (3d Cir. Dec. 19, 2000 (citing SSR 96-8p, 1996 WL 374184, at *7). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistences in the record. *Id.* at *6-7.

    Here, the ALJ provided a thorough narrative discussion of the medical evidence, explaining which evidence they relied upon for Plaintiff's RFC determination. [R. at 23-30.] The ALJ then discusses in great detail Plaintiff's testimony, her husband's statements, entire medical record, and reports prepared for the hearing clearly identifying how each factored into the RFC determination. [*Id.*]

    Plaintiff's claims that the ALJ violated SSR 96-8p in utilizing in the term "light" as a restriction without further explanation is without proper context. [Pl. Br. at 15 (citing SSR 96-8p at *3 ("[T]he RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work").] The SSR goes on to state that a claimant's "RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy." SSR 96-8p at *3.

In its determination, the ALJ stated that Plaintiff was able to perform "light work as defined in 20 C.F.R. § 404.1567(b)" which defines "light work" as "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. . . . [A] job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing an pulling of arm or leg controls." [R. at 23-24.]; 20 C.F.R. § 404.1567(b). While the ALJ did not do a function-by-function analysis, the record indicates the ALJ properly questioned Plaintiff as to the work she previously performed, physical limitations, and abilities. *Garret v. Comm'r of Soc. Sec.*, 274 Fed.Appx. 159, 164 (3d Cir. 2008) (Holding a function-by-function analysis is not necessary if the ALJ properly inquires into and considers a claimant's physical and mental limitations.) As it is clear the ALJ considered Plaintiff's responses, as well as medical examinations into account when determining Plaintiff's RFC and clearly explained her findings, the ALJ's determination was not in violation of SSR 96-8p.

V.    CONCLUSION

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**. An accompanying Order shall issue.

**October 24, 2025**                           s/Renée Marie Bumb
Date                                                    RENÉE MARIE BUMB
                                                             Chief United States District Judge